### COMMONWEALTH *vs.* GILBERT CUMMINGS.

#### SAME *vs.* JAMES McGINNIS.

In this state, a writ of error does not lie, in a criminal case, in behalf of the commonwealth.

The right to file exceptions, in a criminal case, is confined to the defendant.

THESE were indictments for violations of the license laws, found at the January term, 1848, of the municipal court.

In the first entitled case, the defendant pleaded *nolo contendere* to one count of the indictment, and then moved in arrest of judgment for certain formal defects in the indictment. The case was thereupon continued for the consideration of the judges of the court of common pleas at their meeting in July; and, at the succeeding term of the municipal court, the judgment was arrested, and the defendant discharged.

In the second case, the indictment was quashed on the defendant's motion by the municipal court.

The attorney of the commonwealth for the county of Suffolk sued out writs of error from this court, in both cases, on behalf of the commonwealth; and the defendants moved that the writs of error be dismissed.

This motion was argued at the last November term.

*P. S. Wheelock*, for the defendants.

*S. D. Parker*, (county attorney,) for the commonwealth.

SHAW, C. J. These cases come before the court on writs of error brought by the commonwealth, to reverse a judgment of acquittal, on indictments against the defendants, foi violations of the law respecting the sale of spirituous liquors.

There is no precedent, we believe, in this commonwealth, in favor of a writ of error in behalf of the commonwealth, in a criminal prosecution, to reverse a judgment, by which a party criminally prosecuted has been acquitted. These proceedings are an experiment, which, if successful, will deeply affect the practice in criminal prosecutions, all of which, with the few exceptions of capital trials, are conducted in courts subordinate to the supreme judicial court. The question, therefore, is a very important one, and deserves the fullest consideration.

In favor of sustaining the writ, it seems to be necessary, in every well ordered government, that the decisions and adjudications in matters of law, of all courts and bodies vested with judicial powers, within the jurisdiction of any one state or government, should be brought, in some form, to the final adjudication of a tribunal, having a common jurisdiction over the whole of such state, in order to insure uniformity in the judicial administration of the law. This is the more obviously true, in regard to the construction and judicial application of general statutes, made by the legislature for the government of the whole state. A worse uncertainty of the law can hardly be conceived, than that where the legislative acts of a government, by which all persons within its limits ought to be equally bound and protected, should receive a different final construction, in different judicial tribunals, and thus have a different operation upon those who are alike subject to them. Theoretically, this uniformity is supposed to be secured in England by the high court of parliament; and, in some of these states, by a court of errors, with powers prescribed and defined by law.

In support of this view of the subject, and of the authority of this court, as a court of errors, in the case in question, the learned counsel for the government relied strongly on the large powers vested in this court by the provisions of the Rev. Sts. *c*. 81, which are but the revision and reënactment of preceding statutes. These powers, as expressed in §§ 2, 3, 4, 5 and 6, are certainly very large and unlimited; and give the court superintending jurisdiction over all judicial proceedings, civil and criminal, at law and in equity, between party and party, and between the commonwealth and any of the subjects thereof.

These considerations would be very strong, and would afford great weight to the argument in favor of allowing the writs of error, if they were wholly unqualified, and stood alone. But there are some qualifications, though briefly expressed, annexed to them; but, what is more important, they are to be taken in connection with various other legislative provisions, directing when, how, and in what cases, appeals may be taken and prosecuted, exceptions filed, writs of error, *habeas corpus, certiorari, mandamus,* and the like, sued out, as of right, or granted on application; thus, in effect and by implication limiting the generality of the provisions conferring these powers.

Thus, looking at the sections in question, the second provides that this court shall have cognizance of all pleas, &c., which shall be legally brought before them, by original writs, by appeal, writ of error, or otherwise. By the third section, they shall have cognizance of all capital crimes, and of all other crimes, offences and misdemeanors, which shall be legally brought before them. By the fifth, they shall have power to issue writs of error, *certiorari,* &c., and all other writs and processes, that shall be necessary to the furtherance of justice and the regular execution of the laws.

We are therefore to look to other provisions of the laws, which are very numerous, defining the cases wherein appeals are given, and under what conditions and limitations, where one or another of these various writs and processes is pointed

out, as suitable and adapted to particular subjects; and it is difficult to perceive, why the argument drawn from a consideration of the general superintending powers of the court, in support of a writ of error for the commonwealth, would rot apply equally in favor of appeals. But we believe it has never been supposed, that an appeal would lie for any party in a criminal case, except where it had been expressly given by statute ; nor was it ever claimed, when appeals were largely and liberally allowed in criminal cases, that the commonwealth could appeal from a judgment of acquittal.

Indeed, this last consideration, inasmuch as a writ of error is but a qualified mode of appeal, affords a strong argument from analogy against the right of the commonwealth to a writ of error. Thus, in the first statute on the subject, under the constitution, *St.* 1782, *c.* 14, establishing the court of general sessions of the peace, it was provided, that any person, "against whom a sentence shall be given," may appeal, &c.

So, under the revised statutes, where the criminal jurisdiction is vested in the court of common pleas and municipal court, the language is the same. Rev. Sts. *c.* 82, § 28 : "any person *convicted in the court* of common pleas, upon indictment, for a libel, &c., may appeal therefrom to the supreme judicial court ; " and by Rev. Sts. *c.* 82, § 10, "any person convicted on indictment in said (municipal) court, for libel, &c., may appeal," &c. A similar provision is contained in the Rev. Sts. *c.* 138, § 5 : "every person convicted, &c., may appeal," &c. These provisions have been repealed, but they show that whenever appeals have been allowed in criminal cases, it was to the party convicted only, and not to the commonwealth.

Another important question connected with the subject is, whether in any case, in a criminal prosecution, the commonwealth can have a bill of exceptions. Without this, there would be no mode, in which, even by the aid of a writ of error, the material questions of law, raised and decided on the trial of a criminal prosecution, could be brought before this court, because they would not appear upon the record. We

believe it is understood, that in England, though there may have been a few doubtful cases, to the contrary, a bill of exceptions cannot be taken in a criminal case, even by the party accused and brought to trial ; but we are not aware, that the right has ever been claimed by the crown, to file a bill of exceptions, with a view to bringing a writ of error, in case of a judgment of acquittal. We believe that a bill of exceptions, in favor of the accused in this commonwealth, is of comparatively recent origin, and given by statute ; and it may be useful briefly to state that origin.

Formerly, all trials, even trials at bar, required a quorum of the judges, and this was first altered by the statute of 1803, *c.* 94, authorizing trials in the supreme judicial court, before two judges, and in certain cases before one. The fifth section of that statute gave a bill of exceptions to any party aggrieved by any opinion, direction, &c., in any action or process of a civil nature. But it further provided, that all indictments and criminal proceedings should be continued and not tried, unless two justices at least were present. This statute remained in force but a short time, and was succeeded by the statute of 1804, *c.* 105, by which the *nisi prius* system was finally and fully established. This latter statute directed all jury trials in the supreme judicial court to be had before one judge, and allowed exceptions to any party aggrieved by any decision, &c., in any action or process of a civil or criminal nature. This, we believe, is the origin of bills of exceptions in criminal cases in this commonwealth.

By the statute of 1820, *c.* 79, a court of common pleas for the whole state was established, which was invested with general jurisdiction, as well in criminal as in civil cases ; and they were authorized to hold jury trials by one judge. By this act, a right to allege exceptions, to be allowed and signed by the judge, was extended to either party aggrieved, without limiting it, in express terms, to a civil or criminal proceeding ; with a proviso, however, that it was not to deprive any party of his right to a writ of error.

In these legislative provisions, the right to except is given

to any party aggrieved ; whether this would include the commonwealth, not being named, or not, it is not perhaps now necessary to decide ; because we believe, that either on account of the analogy to appeals, or because not in terms given to the commonwealth, or for some other reason, it never was claimed, whilst these provisions were in force, that the commonwealth could allege exceptions in criminal cases. But, by the statute of 1832, *c.* 130, § 5, enlarging and more exactly defining the criminal jurisdiction of the court of common pleas, in criminal cases, the right to allege exceptions is restricted to "any person after conviction thinking himself aggrieved," and by the Rev. Sts. *c.* 138, § 11, the right is allowed to any person who shall be convicted of an offence, &c., "being aggrieved by any opinion, direction, or judgment in matter of law."

It is therefore very clear, that as the law now stands, no bill of exceptions can be claimed by the public prosecutor for the commonwealth, on the trial of a criminal case. Indeed, if it were otherwise, it would change the existing practice, and oblige the public prosecutor to note his objections to all interlocutory directions and decisions of the judge, during the progress of a trial, and would require the judge to take notice of them, with a view to a bill of exceptions ; because it cannot be known until after verdict, that it may not be necessary to prepare and allow a bill of exceptions.

The right of the commonwealth to sustain a writ of error, in a criminal case, does not indeed depend on their right to allege exceptions ; but the want of the latter may afford some ground of argument, because the right to a writ of error would be of little avail in bringing questions of law before the court for revision, without the power of stating them fully in a bill of exceptions, so as to come up with the record. This consideration has a tendency to show, that the intention of the legislature, in limiting the right to file exceptions to the party accused, was also to limit in like manner the right to bring a writ of error.

As far as English authorities go, they are cited in the case

hereafter mentioned.   A very recent case, *Regina* v. *Chad-wick*, 11 Ad. & El. N. S. 205, was brought before the queen's bench, by a writ of error, at the suit of the crown, to reverse a judgment in favor of the defendant, on an indictment for bigamy.   This was the celebrated case, in which it was decided, that a marriage with a deceased wife's sister was unlawful and void.   No question was raised as to whether the crown could have a writ of error, and nothing was said on the subject at the bar or by the court.   It may, however, be remarked, that, in this case, the whole question was upon the record by a special verdict ; so that if the judgment below had been reversed, the court above might have rendered a judgment against the defendant on the original indictment. This distinction has been sometimes considered as of importance, as to the judgment to be entered or reversed.   *Mellen* v. *Moore*, 1 B. & P. 30 ; *Phillips* v. *Bury*, 1 Ld. Raym. 10.   But as the judgment, in *Regina* v. *Chadwick*, was not reversed, and the grounds on which the writ of error was maintained are not stated, the case is not of very strong authority.

In the state of Maryland, it has been decided, that a writ of error will lie for the state in a criminal prosecution.   *The State* v. *Buchanan*, 5 Har. & Johns. 317.   But the case appears to have been decided mainly upon the authority of several previous cases in that state, which have not been reported, and the grounds of which do not appear.

In the case of the *United States* v. *Simms*, 1 Cranch, 251, a writ of error for the United States was sustained, on a judgment for the defendant, on an indictment.   But in the subsequent case of the *United States* v. *More*, 3 Cranch, 174, it was stated by Marshall, C. J., that no question was made in the first case, as to the jurisdiction of the court ; that the decision passed *sub silentio*, and was not a binding authority ; and they decided that a writ of error would not lie on behalf of the United States in a criminal case.

In New York, there were several cases, in which writs of error had been brought in behalf of the people, in criminal

cases, and in some of them judgments were reversed. But, in a very recent case, *The People* v. *Corning*, 2 Comstock, 1, the subject was fully considered and the authorities elaborately reviewed, in the court of appeals, and that court came to the decision, that a writ of error would not lie in behalf of the people, after a judgment for the defendant.

It is not necessary now to state the grounds of that decision, more at large; it is sufficient to refer to it as a full revision of all the authorities on the subject, both English and American.

This court are of opinion, that the weight of authority is adverse to the right of the commonwealth, to maintain a writ of error in a criminal case, and that in every view, which we have been able to take of the subject these writs of error must be dismissed.